**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0492n.06

Case No. 12-6499

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 08, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CALVIN R. MORGAN, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: BOGGS, SILER, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge.  Calvin Morgan pleaded guilty to four charges arising out of his possession of marijuana and the discharge of a firearm during the execution of a search warrant at his apartment.  He received a total sentence of 174 months' imprisonment.  Morgan's appeal focuses on his sentencing under § 924(c)(1)(A)(iii), which provides a ten-year mandatory minimum term of imprisonment, from which the district court varied upward an additional 36 months.  He challenges the reasonableness of the sentence, the interpretation of the statute, and the sufficiency of the indictment.  In the event of remand for resentencing, he requests that the case be assigned to a different district court judge.  For the following reasons, we **AFFIRM**.

## FACTUAL BACKGROUND

In 2012, this court issued an opinion in Morgan's first appeal summarizing the relevant facts, and remanding for resentencing. *United States v. Morgan*, 687 F.3d 688, 690-91 (6th Cir. 2012).

## PROCEDURAL BACKGROUND

In 2009, Morgan pleaded guilty to possessing marijuana with the intent to distribute, in violation of 18 U.S.C. § 841(a)(1) (Count One, "the marijuana-possession count"); discharging a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two, "the § 924(c) conviction"); possessing a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3) (Count Three, "the prohibited-possession count"); and a forfeiture count.

Prior to the first sentencing hearing, the court "calculate[d] Morgan's recommended Guidelines range on the prohibited-possession count" by cross-referencing the attempted-murder guideline provided in USSG § 2A2.1. Thus, the court sentenced Morgan to imprisonment for 57 months for the drug and felon-in-possession offenses, to be served concurrently, and to 144 consecutive months for the firearm offense, for a total term of imprisonment of 201 months. We reversed the sentence and remanded, however, because the district court may have relied on conduct to increase Morgan's sentence under § 924(c) that was also accounted for in the attempted-murder cross-reference and, in applying the cross-reference, may have failed to find that Morgan had a specific intent to kill.

On remand, the district court, accepting the parties' recommendation, decided not to apply the attempted-murder cross-reference to the prohibited-possession count and stated that it would consider Morgan's intent to kill only with respect to the § 924(c) offense. However, it

noted that it found that Morgan intended to kill the intruding police officers. It based this determination on its "prior findings," which credited the officer's testimony about the shooting and Morgan's admissions that he "fired the two shots" into the hallway where individuals were "maybe a foot away" while knowing that "just shooting in the general direction of someone could result in their death . . . ." As the court summarized, Morgan "was aware that another person similarly situated had his home broken into and that he shot the person, he shot a handgun, and that it killed a person. And knowing that information, having that information, this defendant was in his bedroom with others, police announced that they were police, he did not respond." The court determined that Morgan "was able to hear the officers, and having that information when the officers came down the hallway to the bedroom where he was located, he fired shots at head level and in my opinion attempting to kill − intending to kill the officers that were coming down the hallway that he knew to be police."

Before imposing sentence, the court also noted that Morgan was statutorily subject to imprisonment for "not less than ten [years] nor more than life" for the § 924(c) offense. Accordingly, the court, after considering the relevant statutory factors and Morgan's arguments for the mandatory minimum sentence, sentenced Morgan to imprisonment for eighteen months for the drug and felon-in-possession offenses, to be served concurrently, and—varying upward from the 120-month mandatory minimum sentence—to 156 consecutive months for the firearm offense, for "a total term of incarceration of 174 months." The court noted that, even if it accepted Morgan's argument that he was firing warning shots, Morgan's conduct—including the fact that he endangered the lives of the officers and others who were present in his home— merited the 156-month sentence imposed. Morgan objected to the court's finding that he

intended to kill the officers, to its "upper variance of 36 months on the 924(c) count" and to its refusal to vary downward.

## DISCUSSION

### 1. Reasonableness of the Sentence

We review the sentence imposed by the district court for reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010). "This inquiry has both a procedural and substantive component." *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009). We must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive reasonableness. *Gall*, 552 U.S. at 51.

#### A. Procedural Reasonableness

In conducting procedural-reasonableness review, we review the district court's factual findings for clear error. *Battaglia*, 624 F.3d at 351.

##### i. Specific Intent to Kill

Morgan first argues that the three-year upward variance on the § 924(c) conviction was procedurally unreasonable because, contrary to the district court's finding, he did not have a specific intent to kill the officers when he discharged the firearm. Morgan had suggested at resentencing that "the import of the Sixth Circuit opinion remanding [the case] . . . is that [the district court] could reconsider the evidence and find that [Morgan] did not have the intent to kill . . . ." Morgan misinterprets our remand. Our earlier opinion in no way urged or compelled the district court to find that Morgan did not specifically intend to kill. In deciding Morgan's previous appeal, we commented that his challenge to the application of the attempted-murder guideline "accurately highlights a deficiency in the sentencing record: the district court's finding

that Morgan 'had the ability to form the intent' to kill is not the equivalent of finding that he actually formed that intent." *Morgan*, 687 F.3d at 697. On remand, the district court cured that deficiency by specifically finding it was Morgan's "intention to kill those individuals and that he knew [ ] they were police officers, notwithstanding some testimony at the prior hearing to the contrary."

This finding is supported by the factual record, to which the district court consistently referred throughout the sentencing and resentencing proceedings. At resentencing, after making clear that the cross-reference to the attempted-murder guideline would be excluded for purposes of calculating the offense level for the prohibited-possession count, the district court apprised the parties that the "information . . . previously considered . . . regarding [Morgan's] intent to kill" and his "placing other individuals at great risk" would be considered only with respect to the § 924(c) count. Morgan then conceded that he "st[ood] on the record as previously stated." For Morgan now to allege that the district court "did not undertake any new review of the evidence" is at odds with his prior concession, in which he accepted the record as stated and declined to present additional testimony or evidence. The factual record did not change after our remand for resentencing. Regardless, the district court reviewed the evidence again in reaching the conclusion that Morgan had the specific intent to kill. At resentencing, the district court considered Morgan's "conduct . . . very egregious" for the reasons provided at the original sentencing hearing, but offered a "recap," noting for the record that Morgan, "according to testimony presented during the hearing, was aware that [a friend] similarly situated had his home broken into and that [the friend] shot [at the intruder] . . . kill[ing] [him]." Despite "knowing that information, . . . [Morgan] was in his bedroom with others[;] [when] police announced [themselves], he did not respond." The district court "determined that [Morgan] was able to hear

the officers, and having that information when the officers came down the hallway to the bedroom where he was located, [ ] fired shots at head level . . . intending to kill the officers . . . ." The district court further stated that Morgan's conduct "presented a danger to those other individuals" present in the bedroom with him. Lastly, the "fact that [Morgan] hid the gun after he fired the shots, in [the district court's] opinion, [did] not . . . lead[] to the conclusion that he was only acting recklessly." In the alternative, even accepting the argument that Morgan merely was firing warning shots, the district court found the ten-year mandatory minimum sentence would not be appropriate and that the circumstances would still warrant the 156-month sentence imposed.

At the original sentencing hearing, Officer Bridgman testified, in relevant part, as follows: Morgan did not call the police despite indicating he was concerned about being robbed the night the search warrant was executed; upon entering the front door to Morgan's apartment, the officers loudly announced "Police, search warrant"; these announcements persisted as the officers passed through the living room and as they continued down the hallway toward the bedroom in the back of the apartment; it was not reasonable for an occupant in the apartment to have not heard the words "Police, search warrant"; and, based on his location near "the door frame of the bedroom when the shots were fired," it was not reasonable for occupants directly inside the door frame not to know it was the police. Morgan's wife, Beverly, testified that she received a telephone call earlier in the evening on the night of the incident, alleging "two gentlemen were going to bust into the house and mess my husband up." In terms of the timing of the shots fired by her husband, as well as the timing of when she heard the officers say "Police," Beverly indicated that Morgan discharged the firearm "[i]mmediately" after the front door to the

apartment was forced open and that she realized it was police who had entered only after Morgan had fired the gun.

Morgan testified, in relevant part, as follows: he was aware before the police arrived that allegedly there were people who wanted to harm him and potentially his wife but that he did not call the police or leave the residence for the night; he fired warning shots to scare off the intruders, but those warning shots were not directed up toward the ceiling, but rather to the hallway where the intruders were perhaps a foot away; firing toward the ceiling would have made a very loud sound and let others in the vicinity know he had a gun; and he was aware enough to make a conscious decision to conceal the gun under the mattress after firing at the wall to avoid being shot by the police officers as they entered the bedroom. He further admitted being aware that simply shooting in the general direction of someone could result in that person's death. Morgan also testified that he and his wife were in the bedroom smoking crack during the night in question, contradicting her sworn testimony in which she denied use of the drug.

Subsequently, the district court found Beverly's testimony not credible, as she had a motive in the case not to testify truthfully. Beverly did, however, indicate that any individuals present in the hallway would have been visible to her when the shots were fired, which led the district court to believe that she would have seen the officers prior to the time shots were fired. The district court determined that the shots hit the wall or hit the area near the officer's head, and that a person attempting to scare or fire warning shots would not have taken such an action. It also found Morgan was aware of the consequences of shooting in the general direction of another person, given the similar situation confronted by Morgan's friend in the preceding weeks. Based on Morgan's conduct and the surrounding circumstances, as established at the sentencing hearing, the district court clarified at resentencing that Morgan possessed the specific intent to

kill the police officers who entered his apartment. Separately, the district court found Morgan subjected every individual in the bedroom to potential harm from return fire by the police officers. In short, the district court did not clearly err in finding that Morgan specifically intended to kill.

### ii. Statement of Reasons

Morgan next argues that the three-year upward variance on the § 924(c) conviction was procedurally unreasonable because the district court failed to comply with 18 U.S.C. § 3553(c)(2). For sentences within the Guidelines range, § 3553(c) mandates that the district court "state in open court the reasons for its imposition of the particular sentence." For sentences outside the Guidelines range, § 3553(c)(2) additionally requires that the reason stated by the district court be "specific" and that the reason "be stated with specificity in a statement of reasons form."

As a preliminary matter, Morgan's sentence on the § 924(c) conviction is subject to the added requirements of § 3353(c)(2). This is because the Guidelines provision relating to § 924(c) does not provide for sentencing ranges. Instead, USSG § 2K2.4 provides that, except when an individual qualifies as a career offender under USSG § 4B1.1, "the guideline sentence [for a § 924(c) violation] is the minimum term of imprisonment required by statute." USSG § 2K2.4(b). However, the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), made the Guidelines effectively advisory. Thus, the advisory Guidelines sentence for the § 924(c) conviction at issue here is ten years.

At resentencing, after recognizing that a defendant's sentence begins with the Guidelines range (though "not binding . . . and the [c]ourt should and does consider all relevant factors of

[§] 3553"), the district court provided specific reasons for imposing the 156-month sentence for

Morgan's § 924(c) conviction. In explaining the sentence, the district court considered

> the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and provide a just punishment for the offense. And . . . [there exists] the need to provide deterrence, . . . specifically for the individual defendant, as well as general deterrence of others that might be inclined to engage in similar conduct.

> [There is also] the need to protect the public from future crimes of this defendant.

> . . .

> When the [c]ourt looks at this particular defendant's egregious conduct, the need to deter him from future criminal conduct, as well as others that might be inclined to engage in similar conduct, the [c]ourt believes that the [government's] recommendation falls short of what's necessary, and the [c]ourt instead believes it's necessary to impose a period of 36 months above the mandatory minimum to provide deterrence, as well as protection for the public.

The "egregious conduct" to which the district court referred was described in great detail during

the sentencing hearing and was summarized at resentencing. *See supra*. The reasons provided

by the district court were stated in open court and were specific. Also, it was not necessary for

the district court to cite every single § 3553(a) factor in formulating its reasons justifying the

sentence. *See United States v. Kirchhof*, 505 F.3d 409, 413 (6th Cir. 2007) ("If the record

demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion,

the court need not explicitly consider each of the § 3553(a) factors or engage in a rote listing or

some other ritualistic incantation of the factors.") (citing *United States v. Dexta*, 470 F.3d 612,

614-15 (6th Cir. 2006)).

With respect to the district court's alternative finding that the discharge of the firearm

amounted to warning shots that reflected Morgan's recklessness rather than a specific intent to

kill, the court decided

a sentence at the bottom of the range, [i.e.,] the mandatory minimum, would not be appropriate in a case such as this for that type of conduct [Morgan] engaged in. And it's certainly not appropriate and it would be less than would be necessary to provide deterrence not only for this individual, but for others that might be inclined to commit a similar offense. And it essentially would not separate this case from the other cases that the [c]ourt typically sees that would not involve this type of egregious conduct.

We again view the reasoning provided by the district court on this alternative grounds for the sentence imposed to be sufficiently specific.

We next address the "statement of reasons" form. The district court failed to check the correct box on the statement of reasons form indicating that the sentence was outside the advisory Guidelines, but it explained in writing—in the portion of the form dedicated to "Additional Facts Justifying the Sentence in This Case"—that a sentence "36 months above the statutory minimum" is "necessary to provide proper punishment for the defendant's conduct and to deter future criminal conduct by the defendant as well as others that might be inclined to engage in such behavior in the future." It also noted it "would have imposed the same sentence even if it had concluded that [Morgan's] conduct was simply reckless as argued by his attorney." The court explained that Morgan had "endangered the lives of the officers as well as others in his apartment." In providing these reasons on the form as well as thoroughly communicating them in open court, the district court "assure[d] that [it] . . . properly calculated the applicable Guidelines range, . . . [enabling] meaningful appellate review and the perception of a fair sentence." *United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008). The failure to check the correct box on the form amounts to nothing more than a clerical error that was insignificant in light of the clear, explanatory language provided by the district court later in the form.

Morgan relies on *Blackie* for the proposition that failing to provide a written statement as required by § 3553(c)(2) is reversible error. *See id.* at 400. However, despite the written

statement given on the last page of the form, in a section dedicated to "Additional Facts Justifying the Sentence in This Case," Morgan mistakenly treats the district court's failure to fill in a different area of the form pertaining to "the facts justifying a sentence outside the advisory guideline system" as equivalent to not providing a written statement at all. Regardless, "the issue in *Blackie* was not the mere failure of the district court to put reasons for an upward variance *in writing*; rather, it was the district court's failure to provide any specific reasons for an upward variance *at all*." *United States v. Williams*, 396 F. App'x 212, 220 (6th Cir. 2010) (emphasis in original). We explained in *Blackie* that the requirement of providing specific reasons is important "for the public 'to learn why the defendant received a particular sentence.'" *Blackie*, 548 F.3d at 403. Here, the district court provided a lengthy oral explanation at resentencing for the above-Guidelines sentence, much of which was reiterated in the "statement of reasons" form, albeit in the wrong area. Taken together, there can be no uncertainty as to the reasons Morgan received his 156-month sentence on the § 924(c) conviction. We are also mindful that we have "'not vacated a sentence *solely* for failure to meet the statute's written order requirement . . . .'" *United States v. Zobel*, 696 F.3d 558, 567 (6th Cir. 2012) (quoting *Williams*, 396 F. App'x at 220).

## B. Substantive Reasonableness

We review substantive reasonableness for abuse of discretion. *United States v. Richards*, 659 F.3d 527, 549 (6th Cir. 2011). Sentences within the Guidelines are afforded a presumption of reasonableness, though there is no "presumption of unreasonableness" for outside-Guidelines sentences. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc). Further, when reviewing whether an above-Guidelines sentence is reasonable, appellate courts may "take the degree of variance into account and consider the extent of a deviation from the Guidelines."

*Gall*, 552 U.S. at 47. In reviewing a sentence, we give "'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).

Morgan argues that the sentence imposed was substantively unreasonable because the district court imposed a three-year upward variance in a typical mine-run case, and in doing so, ran afoul of § 3553(a)(6)'s mandate to avoid creating unwarranted sentencing disparities between similarly situated offenders. On this record, the district court could reasonably conclude that a sentence above the statutory minimum was necessary to signal the seriousness of the § 924(c) conviction, promote respect for law, afford adequate deterrence both for Morgan and others who might be inclined to engage in similar conduct, and protect the public from further crimes by him. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). Moreover, the district court distinguished this case from the ordinary case of a warning shot directed upward. Here, Morgan—in the company of his wife and two other individuals, one a juvenile—fired shots at the head-level of oncoming police officers, conduct that not only could have seriously harmed or killed one or more officers, but also could have resulted in return fire on the group in the bedroom.

When reviewing whether an above-Guidelines sentence is reasonable, appellate courts may "take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Gall*, 552 U.S. at 47. Morgan received an upward variance of only 30 percent over the 120-month mandatory minimum set forth in § 924(c)(1)(A)(iii). This variance is relatively minor when compared to others that we have previously affirmed. *See United States v. Stewart*, 628 F.3d 246, 260-61 (6th Cir. 2010) (affirming 100 percent variance); *United States v. Vowell*, 516 F.3d 503, 511-13 (6th Cir. 2008) (affirming 242 percent variance). That Morgan's variance is relatively minor matters because, "[i]n general, 'a major departure should be supported by a

more significant justification than a minor one.'" *Bolds*, 511 F.3d at 580 (quoting *Gall*, 552 U.S. at 50); *see also United States v. Stall*, 581 F.3d 276, 281-82 (6th Cir. 2009).

Moreover, the district court expressly considered "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct . . . ." § 3553(a)(6). In stating the advisory Guidelines sentence at the outset, the district court complied with the requirement that it "should begin [the] sentencing proceeding[] by correctly calculating the applicable Guidelines range[,]" which "should be the starting point and initial benchmark" of the district court's sentencing analysis. *Gall*, 552 U.S. at 49. By "initially and correctly determining what [Morgan's] advisory Guidelines range would be, the sentencing court necessarily . . . took account of the national uniformity concern embodied in § 3553(a)(6)." *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). The court referred to "a couple of cases from the Sixth Circuit, one case from this district" relied upon by the parties where the "sentences [ ] were imposed above the mandatory minimum term." It went on to note that "each case is individual and must be handled individually." Although § 3553(a)(6) is concerned with national disparities, "the district court did consider disparities as one of the several factors it balanced and there is no requirement that every factor be discussed at length." *Blackie*, 548 F.3d at 400 (citing *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007), and *Houston*, 529 F.3d at 751-52).

The court considered the need to avoid disparities among similarly situated defendants and factored that need into its sentencing decision. A review of the record does not show that the incarceration imposed was an unreasonable sentence, regardless of whether it is the sentence this court might have imposed. *United States v. Liou*, 491 F.3d 334, 340 (6th Cir. 2007). We are unable to find that the district court abused its discretion.

## 2. Interpretation of § 924(c)(1)(A)

As a matter of first impression, we consider whether § 924(c)(1)(A) only authorizes fixed-term minimum sentences or whether it may also authorize a life sentence. Section 924(c)(1)(A) provides, in relevant part, that anyone who "uses or carries a firearm" in relation to a "crime of violence or drug trafficking crime" shall:

> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Morgan argues, in essence, that the district court erred because the statutory maximum sentence under § 924(c)(1)(A) is the mandatory minimum sentence; namely, five years if the firearm is used or carried, seven years if the firearm is brandished, and ten years if the firearm is discharged.

The Supreme Court has noted on numerous occasions that "in all cases involving statutory construction, 'our starting point must be the language employed by Congress,' . . . and we assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979), and *Richards v. United States*, 369 U.S. 1, 9 (1962)). "The words 'not less than' signify in the smallest or lowest degree, at the lowest estimate; at least." Black's Law Dictionary 1063 (6th ed. 1990). In the context of § 924(c)(1)(A)(iii), we view the language employed as establishing a floor of ten years' imprisonment, leaving open sentences above that floor. Our reading of the statute is supported by the legislative history. Prior to 1998, § 924(c) set forth mandatory sentences. *See* 18 U.S.C. § 924(c)(1) (1994) (stating that a person

- 14 -

shall "be sentenced to imprisonment for five years" for using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime). In 1998, Congress amended § 924(c), "chang[ing] what were once mandatory sentences into mandatory minimum sentences." *United States v. O'Brien*, 560 U.S. 218, 232 (2010); *see also* Pub. L. No. 105-386, § 1, 112 Stat. 3469 (1998). "The 1998 amendment signals Congress's intent that the ten-year sentence in § 924(c)(1)(A)(iii) be 'the minimum or the floor, not the floor and ceiling as the prior version of the statute provided,' and that it 'left open the ceiling.'" *United States v. Dorsey*, 677 F.3d 944, 956 (9th Cir. 2012) (quoting *United States v. Sias*, 227 F.3d 244, 246 (5th Cir. 2000)).

The statutory maximum permitted under § 924(c)(1)(A) is a life sentence. In arriving at this conclusion, we are guided by the Supreme Court's recent pronouncements on the matter. In *Alleyne v. United States*, 133 S. Ct. 2151, 2160 (2013), the majority commented that "[b]ut for a finding of brandishing, the penalty is five years to life in prison; with a finding of brandishing, the penalty becomes seven years to life. Just as the maximum of life marks the outer boundary of the range, so seven years marks its floor." In another instance, the majority reiterated that "the sentencing range supported by the jury's verdict was five years' imprisonment to life." *Id.* at 2163. Morgan regards these pronouncements as "dicta because . . . the defendant[] received the fixed-term sentence and the [district] court[] did not vary upward." Morgan is correct in his assertion. "Dicta is the '[o]pinion[] of a judge which do[es] not embody the resolution or determination of the specific case before the court.'" *Hinchman v. Moore*, 312 F.3d 198, 203-04 (6th Cir. 2002) (quoting Black's Law Dictionary 454 (6th ed. 1990)).

In *Alleyne*, the Court considered whether judicial factfinding that increases the mandatory minimum sentence for a crime is permissible under the Sixth Amendment. 133 S. Ct. at 2155. The Supreme Court held that "any fact that increases the mandatory minimum is an 'element'

that must be submitted to the jury," thus overruling *Harris v. United States*, 536 U.S. 545 (2002). *Id.*

Nonetheless, despite not resolving the statutory question at issue here, *Alleyne* is controlling. Lower courts are "obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 447-48 (6th Cir. 2010) (quoting *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002)). *See also Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements"); *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings").

Moreover, each of our sister circuits to address this issue has similarly concluded that the statutory maximum is life imprisonment. *See United States v. Johnson*, 507 F.3d 793, 798 (2d Cir. 2007); *United States v. Shabazz*, 564 F.3d 280, 289 (3d Cir. 2009); *United States v. Cristobal*, 293 F.3d 134, 147 (4th Cir. 2002); *Sias*, 227 F.3d at 246; *United States v. Lucas*, 670 F.3d 784, 795-96 (7th Cir. 2012); *United States v. Gamboa*, 439 F.3d 796, 811 (8th Cir. 2006); *Dorsey*, 677 F.3d at 958; *United States v. Avery*, 295 F.3d 1158, 1170 (10th Cir. 2002); *United States v. Pounds*, 230 F.3d 1317, 1319 (11th Cir. 2000) (per curiam).

Last, Morgan argues that any doubts about the proper interpretation of the statute should be resolved in his favor under the rule of lenity. As discussed above, the language of the statute is clear and definite. "The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree."

*Muscarello v. United States*, 524 U.S. 125, 138 (1998). The rule of lenity only applies if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that [we] must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (internal quotation marks and citations omitted). In this case, the statutory text and its evolution from prior constructions convince us that the mandatory minimum sentences set forth in § 924(c)(1)(A) do not represent the maximum sentences authorized under the provision. Morgan's arguments to the contrary are insufficient to render the statute grievously ambiguous.

### 3. Sufficiency of the Indictment

Morgan claims that because the indictment did not specifically charge a violation of § 924(c)(1)(A)(iii)—the statutory clause imposing "no[] less than 10 years" imprisonment for the discharge of a firearm—but instead charged a generic violation of § 924(c)(1), the indictment exposed him to the lowest mandatory sentence outlined in § 924(c)(1), i.e., five years. Morgan's argument fails on two grounds.

Generally, a valid guilty plea "bars any subsequent non-jurisdictional attack on the conviction." *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (quoting *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991)). "[I]n the absence of a court-approved reservation of issues for appeal, [a defendant pleading guilty] waives all challenges to the prosecution except those going to the court's jurisdiction." *Pickett*, 941 F.2d at 416 (citing *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987)). Because Morgan failed to enter a conditional guilty plea, his challenge is waived.

Even setting aside this failure to pursue what is his affirmative duty, Morgan's claim that the sentence was improper because of the charge listed in the indictment fails as a matter of law.

First, his attempt to recast his challenge as being distinct from one based on the sufficiency of the indictment is disingenuous at best. There is no doubt Morgan's argument goes directly to the sufficiency of the indictment. *See United States v. Kuehne*, 547 F.3d 667, 695-96 (6th Cir. 2008) (analyzing the sufficiency of the indictment where a defendant challenged three counts contained therein for not specifying "which drug trafficking crimes were the predicate offenses for the imposition of § 924(c)(1). In short, the indictment failed to allege a requisite element of § 924(c)(1) itself, i.e., the commission of a drug trafficking crime."). Ordinarily, we review challenges to the sufficiency of an indictment de novo. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). However, where the sufficiency of an indictment is not challenged until appeal, "the indictment must be construed liberally in favor of its sufficiency." *Id.* "Under such circumstances, a conviction must not be reversed unless the indictment cannot be reasonably construed to charge a crime." *United States v. Lloyd*, 462 F.3d 510, 513 (6th Cir. 2006).

Here, despite not specifying the exact portion of § 924(c)(1) with which Morgan was charged, the indictment tracked the statutory language of § 924(c)(1)(A)(iii) inasmuch as it charged that "[o]n or about November 20, 2008, in Shelby County, in the Eastern District of Kentucky, [Morgan], during and in relation to [a] drug trafficking crime . . . did knowingly use, carry, and discharge a firearm . . . ." Thus, the indictment properly gave Morgan notice of the charges he was facing. *See Kuehne*, 546 F.3d at 696. Moreover, the indictment was sufficiently specific to provide protection against double jeopardy because the count identified the particular date on which the offense occurred and the conduct involved (discharge of a firearm). *See id.* Therefore, the indictment is sufficient.

Furthermore, the plea agreement itself, which Morgan acknowledged to have been "underst[ood]," "fully explained," and "ent[ered] into . . . voluntar[ily]," detailed "the following facts that establish the essential elements of the offense[] beyond a reasonable doubt," namely, that "Morgan admitted he had the firearm and fired it . . . ." It also stated that "[w]ith regard to Count 2 [(the § 924(c) conviction)], the statutory punishment is not less than 10 years . . . ." At rearraignment, counsel for the government was asked by the district court to review the essential parts of the plea agreement; the government stated that Morgan "admits that he possessed a quantity of marijuana with intent to distribute it, and admits that the use and discharge of his firearm was related to his drug trafficking activity," to which Morgan agreed was accurately summarized. Later, after additional discussion by the district court of the counts covered in the plea agreement, the court asked Morgan to describe "in [his] own words" what he had done "to be guilty of those charges." Morgan responded that he "was selling marijuana, thought somebody was breaking [into his] house, [and] so discharged the firearm." In sum, Morgan—on multiple occasions—recognized and admitted his conduct entailed the discharge of a firearm in relation to a drug-trafficking crime, and that he was subject to a ten-year mandatory minimum sentence.

**4. Reassignment on Remand**

In light of our affirming the district court's sentencing of Morgan, we need not reach the issue of whether to reassign the case to a different judge on remand.

**AFFIRMED**.