NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0072n.06

No. 18-5585

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff-Appellee,              )
                                         )
v.                                       )
                                         )
LARECO BROOKS,                           )
                                         )
        Defendant-Appellant.             )
                                         )

**FILED**
Feb 13, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

BEFORE:     COLE, Chief Judge; SUHRHEINRICH and MOORE, Circuit Judges.

**SUHRHEINRICH, J, delivered the opinion of the court as to Parts I, II.B, and II.C., in which COLE, C.J., and MOORE, J., concurred. MOORE, J. (pp. 9–12), delivered the opinion of the court as to Part II.A., in which COLE, C.J., concurred. SUHRHEINRICH, J., (pg. 13), delivered a separate opinion dissenting from Judge Moore's opinion as to Part II.A.**

**SUHRHEINRICH, Circuit Judge.** "[F]or a handful of one dollar bills," Defendant Lareco Brooks faces 190 months in prison for robbing a Family Dollar Store after pleading guilty to armed robbery and using a weapon during and in relation to the robbery. On appeal he argues that his sentence is both procedurally and substantively unreasonable. For the reasons to follow, we AFFIRM.

**I.**

On January 21, 2017, Brooks and Trentell Razor (collectively "Defendants") robbed the Family Dollar Store at 2912 Coleman in Memphis, Tennessee. Brooks, who was armed with a sawed-off shotgun, pointed the gun at employee Shirley Smith and pushed her to the floor. He

then grabbed manager Monique Beard by the collar, leaned her over the counter, put the gun to her head, and ordered her to open the cash register. Razor grabbed $200 from the cash register, and Defendants fled. Because a tracking device accompanied the stolen money, Memphis Police Officers were able to locate Defendants in a red 2004 Kia Spectra, which they attempted to stop. But Razor, the driver, did not stop. Brooks, the passenger, bailed out of the Kia, and, as he ran, dropped a sawed-off shotgun in front of 3693 Ladue, a residence. The officers continued to follow Razor in the Kia. Razor jumped ship in front of 2391 Wingate, another residence, and the officers apprehended him. Meanwhile, the now-unoccupied Kia traveled approximately 50 yards until it struck a pole, rolling over an officer's foot along the way.

Turns out, the shotgun, a prohibited firearm not registered in the National Firearms Registration and Transfer Record, was not loaded.

Brooks pleaded guilty to robbery in violation of 18 U.S.C. §§ 2 and 1951, and using, carrying, and brandishing a weapon during and in relation to the robbery in violation of 18 U.S.C. §§ 2 and 924(c). The presentence report set Brooks' base offense level for the robbery at 20, and added 2 points under USSG § 3C1.2 for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. After another 2-point upward adjustment because a person was physically restrained, and a 3-point reduction for acceptance of responsibility, Brooks had a total offense level of 21. Brooks had 6 criminal history points, which gave him a criminal history category of III. His sentencing guidelines range on the robbery count was 46 to 57 months and 10 years consecutive on brandishing a firearm during a crime of violence count.

Brooks contested the reckless endangerment enhancement in objections to the presentence report. He also submitted a sentencing memorandum in which he asked the district court to

(1) grant him a downward variance based on his father's lack of involvement in his life, and (2) reduce his sentence on the predicate armed robbery count in light of the ten-year mandatory minimum for the § 924(c) count. Brooks requested a sentence of 144 months. The United States recommended a sentence of 180 months.

The district judge watched the surveillance video of the robbery at the sentencing hearing. He also heard the testimony of Brooks' mother, Keisha Hicks. She explained that Brooks' father walked out when Brooks was three years old, had been addicted to drugs, and was presently incarcerated (*id.*). Hicks felt that this affected Brooks' behavior. (*Id.*) The district court agreed, stating that "something was really affecting [Brooks], maybe it was his father being absent in his life. . . . I guess that was something that was missing from Mr. Brooks' life." Notwithstanding, the district court rejected Brooks' arguments, sentencing him to 46 months on the armed robbery count, "at the low end of the guideline range," and 144 months on the brandishing firearm count, a 20 percent upward variance, because "the minimum, the statutory range is inappropriate in this case in light of the fact the way it was used."

## II.

In his plea agreement Brooks waived his right to appeal any sentence within the applicable guidelines range or lower, but his sentence is above the applicable guidelines range and therefore appealable. He presents three arguments on appeal. We review criminal sentences for procedural and substantive reasonableness, *Gall v. United States*, 552 U.S. 38, 51 (2007), using the deferential abuse-of-discretion standard of review, *id*. at 51-52. This is true "whether the sentence imposed is inside or outside the [Sentencing] Guidelines range," although a sentence outside the Guidelines range is not entitled to a presumption of reasonableness. *Id.* at 51.

Improperly calculating the Guidelines range renders a sentence procedurally unreasonable. *Id.* A sentence may be substantively unreasonable if the district court chooses a sentence arbitrarily, relies on impermissible factors, or gives an unreasonable amount of weight to any one § 3553(a) factor. *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008). Once we determine that a sentence is procedurally sound, we assess its substantive reasonableness. *Gall*, 552 U.S. at 51. We consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* We evaluate whether the "sentence is adequate, but not greater than necessary to accomplish the sentencing goals" set forth in 18 U.S.C. § 3553(a). *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (citation and internal quotation marks omitted)

## B.

Brooks asserts that the district court rendered his sentence substantively unreasonable by denying his request for a downward variance based on his father's lack of involvement in his life, and in the process, giving too much weight to another § 3553(a) factor, protecting the public.[1] A sentencing court must consider the defendant's history and characteristics. 18 U.S.C. § 3553(a)(2). Giving unreasonable weight to any one factor renders a sentence substantively unreasonable. *Vowell*, 516 F.3d at 510.

The district court engaged in a detailed analysis of the pertinent § 3553(a) factors. Initially, the court reflected on its responsibility to impose a sentence that is sufficient but not greater than necessary to accomplish the goals of the Guidelines as well as § 3553(a), "taking into account the entire sentencing record." Reflecting on the nature and circumstances of the offense, the court found that the robbery was "an extremely serious offense." As reported in the presentence report

---

[1] The government urges that we apply plain error review because Brooks did not object to his sentence when imposed. But substantive reasonableness claims do not need to be raised in the district court to be preserved for appeal. *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011). We find no error under the abuse-of-discretion standard of review in any event.

and displayed in the surveillance video, Brooks traumatized employees Smith and Beard by pointing a sawed-off shotgun at them and pushing them to the floor. Next, the district court addressed the history and characteristics of the defendant. The court catalogued Brooks' criminal history. His juvenile criminal history included attempted aggravated burglary, aggravated burglary, burglary of a building, and evading arrest. Brooks also had a felony conviction for facilitation of aggravated robbery, and was on diversion[2] when he robbed Family Dollar. The court considered Brooks' personal history, based in large part of Hicks' testimony, including the fact that Brooks' biological father had been absent from his life. The court noted that his mother "raised him right," and that he had "a normal type of childhood," but "for whatever reason didn't take." Also, other than the detriment experienced from an absent father, Brooks had no physical, mental, or emotional conditions.

The district court considered the seriousness of the offense and the need to provide adequate punishment, reiterating its finding that the crime was "very serious," and commenting that "[i]n his short life [Brooks] has demonstrated a total lack of respect for the law, just continues to get into trouble . . . ." The court stressed the significance of deterrence, as well as the "very significant factor" of "protecting the public from futures crimes of [Brooks]." Based on the video and his criminal history, the district court concluded that Brooks was "a danger to the community": "[L]istening to his mother and listening to him, his father not being in his – in his life, that's a two[-]edge sword because obviously he can't conform himself to society. If that is the reason, society has to be protected from him because he can't control himself."

In short, the record establishes that the district court properly and carefully considered the pertinent § 3553(a) factors in determining Brooks' sentence and acted within its discretion in

---

[2] As explained by the district court, "[d]iversion is a special type of probation over on the state side"; if a defendant commits no crimes during the diversion period, the crime is expunged from his record.

placing more significant weight on the need to protect the public from further crimes by Brooks in light of his criminal history. *See United States v. Adkins*, 729 F.3d 559, 571-72 (6th Cir. 2013) (district court acted within its discretion in placing more weight on one factor, a prior gunshot wound, despite the defendant's troubled family circumstances, including an absent father and drug-addicted mother, given the defendant's drug dependency, use of a weapon, and previous acts).[3] In the end, Brooks' claim "ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). As such, "[i]t is 'simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence.'" *Id.* (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

## C.

Last, Brooks argues that the court erred by varying upward 24 months (or 20 percent) based on the "way" the firearm was used, because the Sentencing Guidelines already take this factor into account. That is, Brooks contends that, pursuant to USSG § 2K2.4(b), his sentencing guidelines range was 10 years because he possessed a short-barreled shotgun. By contrast, the Guidelines range for possession of a firearm during a crime of violence is 5 years, for brandishing a crime of violence is 7 years, and for discharging a firearm during a crime of violence is 10 years. *See* USSG § 2K2.4(b); 18 U.S.C. § 924(c)(1)(A)(i)-(iii) & (B)(i). Thus, according to Brooks, "Congress

---

[3]Except for the fact that she had an absent father too, Brooks' situation does not resemble the defendant's in *United States v. Jenkins*, who was placed in foster care, struggled with mental health issues, suffered abuse, and did not inflict any physical injury on the victim. 122 F. Supp. 3d 639, 665-67 (E.D. Ky. 2013). Brooks had a loving mother, was raised in a stable environment, was not abused, terrorized two store employees during the robbery, and eluded apprehension for four days. The case does not support his argument for mitigation.

determined the appropriate sentence for certain firearms offenses because they [sic] differentiated the sentences by the manner that the firearm is used."

This argument is without merit. Under 18 U.S.C. § 924(c), *use* of a short-barreled shotgun during and in relation to a crime of violence shall be sentenced to a term of *not less than* 10 years. 18 U.S.C. § 924(c)(1)(B)(i).[4] That subsection does not address the *way* the sawed-off shotgun is used (as opposed to a firearm that is brandished under § 924(c)(1)(A)(ii)). The district court based the variance on the *manner* in which the sawed-off shotgun was used---namely, pointing a sawed-off shotgun at two victims and threatening to shoot them, and holding the gun directly to the head of one of them while grabbing her by the collar and demanding money. Stated differently, the district court focused on the "egregious" nature of the offense, when varying upward from the mandatory minimum. *Cf. United States v. Morgan*, 572 F. App'x 292, 297, 298-99 (imposition of 30 percent upward variance above the § 924(c) conviction for discharging a firearm during a drug trafficking crime was substantively reasonable based on the defendant's "egregious conduct"; unlike the ordinary case of a warning shot, the defendant fired shots at the head-level of oncoming police officers and also could have seriously harmed others in the bedroom from return fire by the officers). Furthermore, the variance here—20 percent above the 120-month mandatory minimum, is relatively minor. *Id.* at 299; *see generally Gall*, 552 U.S. at 47 (appellate court may "take the degree of variance into account and consider the extent of a deviation from the Guidelines" in assessing reasonableness of above-Guidelines sentence); *United States v. Lanning*, 633 F.3d 469, 475-76 (6th Cir. 2011). Overall, the district court selected a punished it felt fit Brooks' crimes, "reflect[ing] the seriousness of the offense . . . and . . . protect[ing] the public from future crimes

---

[4]The maximum sentence is life imprisonment. *United States v. Morgan*, 572 F. App'x 292, 300-01 (6th Cir. 2014).

of [Brooks]." Giving due deference to the court's decision, we find no abuse of discretion in the extent of the upward variance. *See Vowell*, 516 F.3d at 512-13.

**KAREN NELSON MOORE, Circuit Judge, delivering the Majority Opinion for Part**

**II.A.** Brooks argues that the district court erred when it applied the enhancement for reckless endangerment during flight, U.S.S.G. § 3C1.2, when calculating his guidelines range. The reckless-endangerment enhancement applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer[.]" U.S.S.G. § 3C1.2.

The sole piece of evidence presented to the district court to support application of the enhancement was the Presentence Investigation Report (PSR), and only one paragraph of the PSR discusses Brooks's flight. It says:

> [O]fficers activated emergency equipment and attempted to make a traffic stop [of the vehicle in which Brooks was a passenger.] The passenger, identified as Brooks, bailed out bailed out of the [car.] While fleeing on foot, Brooks dropped a[n unloaded] sawed-off shotgun in front of 3693 Ladue. Brooks eluded apprehension. The officers continued to follow the [car] . . . . The sawed-off shotgun was [later] recovered.

R. 75 (PSR at ¶ 7) (Page ID #170). The district court used this evidence to overrule Brooks's objection to the application of the reckless-endangerment enhancement and applied the two-level enhancement when calculating Brooks's guidelines range. The enhancement increased the lower end of Brooks's guidelines range by nine months and the upper end by 11 months. *Id.* at ¶ 67 (Page ID #180); R. 75-1 (Objs. to PSR at 2) (Page ID #184).

The information in the PSR does not support an application of the reckless-endangerment enhancement by a preponderance of the evidence, even after affording the district court all due deference. *See United States v. Woods*, 604 F.3d 286, 293 (6th Cir. 2010).

There were two theories of how Brooks's conduct created a substantial risk of death or serious bodily injury to another person. The first is that the discarded gun itself created a substantial risk. The idea that a discarded gun creates a substantial risk of serious bodily harm to

another person is well supported by caselaw. This theory does not, however, apply here; Brooks's gun was unloaded. The cases on discarded guns make clear that the substantial risk of serious bodily injury stems from the gun's ability to fire. In some instances, the risk identified is that of the gun firing upon being dropped. *E.g. United States v. Howard*, 301 F. App'x 446, 448–49 (6th Cir. 2008). More often, the risk is that the weapon would be fired when recovered—especially when there is a likelihood it would be discovered by a child or teenager. **United States v. Stafford, 721 F.3d 380, 403 (6th Cir. 2013) ("[T]**here was a significant possibility that a bystander could have come across the loaded weapon and been hurt, or used it to hurt someone else. These actions created a substantial risk of serious injury."); *United States v. May*, 430 F. App'x 520, 526 (6th Cir. 2011) ("[B]ecause it was possible that someone, whether an adult or child, would recover and discharge the firearm, [the defendant] created a *risk* of death or serious bodily injury." (emphasis in original)). Obviously, both of these dangers are predicated on the gun being loaded. Brooks's unloaded gun was incapable of creating this sort of substantial risk of serious bodily injury.

The district court, however, based its application of the reckless-endangerment enhancement on the second theory: that by drawing a gun in front of officers, Brooks provoked a substantial risk that officers would open fire and perhaps injure other officers or bystanders. This theory of reckless endangerment is also supported by our caselaw, and it does not hinge on whether the gun was loaded or unloaded. Because officers are not expected to know whether a firearm is loaded or unloaded, pulling out any firearm in view of police officers while in flight creates a risk that officers might fire their weapons. *United States v. Tasaki*, 510 F. App'x 441, 444–45 (6th Cir. 2013).

The problem is that the PSR does not say, or even suggest, that the officers saw Brooks take out his weapon. The PSR says Brooks bailed out of the car and dropped the shotgun while

fleeing, and that the shotgun was later recovered at 3693 Ladue. It gives no information about what the officers saw or, crucially, *when* Brooks pulled out the gun. The address at which the gun was recovered is known, but the PSR does not say where Brooks "bailed out." There is nothing from which the district court could have inferred that Brooks pulled out the gun in front of the officers; it is equally possible that he waited until the officers drove off in pursuit of his accomplice before he took out the gun. The evidence did not support a finding by the preponderance of the evidence that the enhancement was applicable.

Granted, the officers knew a gun was used to commit a crime, but this cannot be enough. The reckless-endangerment enhancement applies when "the defendant recklessly create[s] a substantial risk of death or serious bodily injury to another person in the course of [flight.]" U.S.S.G. § 3C1.2. To say that knowing a suspect might have a weapon is sufficient to support the enhancement would mean that the enhancement applies whenever someone flees a crime in which a gun was used. Our cases demand something different, however. They link a specific aspect of the flight, such as discarding a loaded weapon, with a specific risk, such as the weapon being recovered by a child. *E.g.*, *May*, 430 F. App'x at 526 (explaining that discarding a loaded firearm in a public-housing complex created a substantial risk of serious bodily harm because someone could "recover and discharge the firearm"); *see also United States v. Easter*, 553 F.3d 519, 523-24 (7th Cir. 2009) (explaining that reaching for a gun in front of police officers creates a substantial risk of serious bodily harm because the officers might view the action as a threat and open fire). The risk of officers opening fire on someone in flight because they think he might have a gun is not a substantial risk.

The facts available to the district court are inadequate to support a finding by the preponderance of the evidence that Brooks's conduct "recklessly created a substantial risk of death

or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

Therefore, we vacate Brooks's sentence and remand for resentencing in light of this opinion and

without the § 3C1.2 enhancement.

**SUHRHEINRICH, J., dissenting from the majority opinion in Part II.A.** The majority decides that the reckless endangerment enhancement is unwarranted because "[t]he risk of officers opening fire on someone in flight because they think he might have a gun is not a substantial risk." Maj. Op. as to Part II.A. at ___. I disagree with this assertion. More to the point, so did the district court, which found that the enhancement was appropriate "in light of the full surrounding circumstances, where it was discarded and the circumstances under which it was discarded."

The district court knew from its review of the record that: (1) when the officers gave chase, they knew that one of the two fleeing suspects had just threatened two employees with a sawed-off shotgun; (2) when they gave chase, the officers did not know that the shotgun was unloaded; and (3) the chase took place through a residential area. Given this combination of factors, it is not a hard call to say that the odds that someone could get seriously hurt—be it a cop, Brooks himself, or a bystander—were substantially increased. *Cf. United States v. Easter*, 553 F.3d 519, 523-24 (7th Cir. 2009) (upholding § 3C1.2 enhancement based on the district court's finding that the defendant created a substantial risk of harm when he reached for his gun "because he risked causing one of the officers to shoot and possibly hit another officer, or [the defendant], or some other person in the area"). The district court's determination that the facts justified the enhancement is entitled to substantial deference. *See United States v. May*, 430 F. App'x at 520, 527 (6th Cir. 2011). The court therefore did not impose a procedurally unreasonable sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Our caselaw articulates theories, to be sure. But if those theories are not carefully applied, they are simply verisimilitudes. The reality is that when police officers chase absconding criminals, whom they have reason to believe are still possessing a dangerous weapon, through a neighborhood, the likelihood that someone could hurt is substantial.