NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0633n.06

No. 11-6355

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 08, 2013*
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA, )
)
          Plaintiff-Appellee, )
)
v. )
)
RICKY VERNON BRYANT, )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR THE
)  EASTERN DISTRICT OF TENNESSEE
          Defendant-Appellant. )

Before:  MOORE and GRIFFIN, Circuit Judges; and SARGUS, District Judge.[*]

**SARGUS, District Judge.**  Ricky Vernon Bryant ("Appellant") appeals his conviction on charges of bank robbery, 18 U.S.C. § 2113(a) and (d), and brandishing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c).  He contends that the district court erred in denying his motion for acquittal based upon the insufficiency of the evidence.  He also asserts that the district court erred in imposing a sentence above the guideline range set forth in the Federal Sentencing Guidelines.  Finding no merit to either assignment of error, we affirm the conviction and the sentence.

**I.**

Following indictment by the grand jury, the appellant was convicted after trial by jury. Testimony revealed that on September 27, 2010, a white male entered the Cosby Branch of the

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

National Bank of Tennessee, pointed a rifle at the tellers, and demanded all the money in the bank. The branch manager, three other employees, and a customer were present during the robbery.

The bank robber repeatedly told the tellers that he would kill them unless they gave him all of the money in the bank. The rifle used in the robbery was initially wrapped and concealed in a green towel, which the robber dropped and left in the bank. The robber also flung a blue bag at the tellers and told them to place the cash into the bag. The bag was filled with more than $260,000 in cash, most of which has not been recovered. Angela Mathis, branch manager, observed the robber leave the bank and drive away in a Jeep with red or orange tape on it.

A hunter later found a blue bag full of dye-stained money in a wooded area in the vicinity of Bryant's house. Captain Derrick Woods testified that he located a Jeep with orange tape on the exterior near the appellant's residence. In the same location, he found a rifle similar to the one used in the robbery.

The towel dropped at the bank was found to contain DNA, which was compared to a sample taken from the appellant. Bradley Everette, a serology forensic scientist with the Tennessee Bureau of Investigation, testified that it was scientifically unreasonable that the DNA taken from the towel was not that of the appellant.

Sherlene Conyers, who pleaded guilty to being an accessory after the fact in the same robbery, testified that Bryant had asked her to visit the branch bank prior to the robbery and to draw the layout of the facility. She also gave him information as to the security guard and the location of the tellers. Three days after the bank robbery, Bryant asked her to pick him up and take him to his

residence where he could pick up money.  For her services, he paid her with eighteen pills of 80 milligram oxycodone and $200 in cash.

Bryant's son testified that the appellant had a severe addiction to oxycodone.  He also recognized the towel found at the scene and the jacket worn by the robber as belonging to his father. Bryant's stepfather testified that the rifle used in the bank robbery was similar to the one he had loaned the appellant.

After the jury convicted Bryant, the presentence report calculated the guideline range as to Count One, bank robbery, to be 51 to 63 months.  As to Count Two, brandishing a firearm during a crime of violence, the conviction carried a mandatory, consecutive minimum sentence of 84 months (seven years), for a combined sentencing guideline range of 135 to 147 months.  No objections were lodged to any finding made in the presentence report.  The Government requested an upward variance to a combined sentence of 204 months based upon the injury suffered by the bank employees and customer.

The district court correctly calculated the sentencing guideline range and granted an upward variance to a combined sentence of 184 months.

## II.

As to Bryant's claim that the evidence was insufficient to support a conviction, our task is to determine  "after viewing the evidence in the light most favorable to the prosecution, [whether] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. LaPointe*, 690 F.3d 434, 443 (6th Cir. 2012) (*citing United States v. Pennymen*, 889 F.2d 104, 106 (6th Cir. 1989)).

This Court reviews the sentence imposed by the district court for both procedural and

substantive reasonableness.[1]  While the appellant characterizes the above guideline sentence as an

upward departure as authorized in some circumstances under the Sentencing Guidelines, the record

below clearly indicates that the district court looked to 18 U.S.C. § 3553(a)[2] and determined a

---

[1]The appellant does not challenge the procedural reasonableness of the sentencing process.

[2]§3553. Imposition of a sentence

(a) Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing

variance, rather than upward departure, from the sentencing guidelines was warranted. We have distinguished departures from variances, deeming departures as deviations based upon sentencing guideline provisions and variances as based upon § 3553(a) factors. *See Irizarry v. United States,* 553 U.S. 708, 714 (2008); *United States v. Grams*, 566 F.3d 683, 686–687 (6th Cir. 2009).

"A sentence is substantively unreasonable if the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *United States v. Mitchell*, 681 F.3d 867, 881 (6th Cir. 2012) (*citing United States v. Cunningham*, 669 F.3d 723, 728 (6th Cir. 2012)). This Court considers "the length of the sentence and the factors evaluated . . . by the district court in reaching its sentencing determination." *United States v. Herrera-Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009).

While a sentence within the sentencing guideline range is assumed by this Court to be presumptively reasonable, a sentence which varies from the guideline range is not subject to a presumption of unreasonableness. *Gall v. United States*, 552 U.S. 38, 47 (2007). This Court considers the extent of the variance imposed, but deferentially reviews the district court's consideration of sentencing factors under 18 U.S.C. § 3553(a). *Id.*

---

Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. (Footnote omitted.)

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**III.**

Bryant contends that no reasonable jury could have found him guilty beyond a reasonable doubt. Bryant recites a long list of what he considers deficiencies in the Government's case. For example, the branch manager could not at first identify him, even though she had known Bryant his entire life. He questions whether the Government had proven the means by which his DNA was located upon the cloth dropped in the bank. He notes that the description of the jacket worn by the robber is the type owned by most residents of Cocke County, Tennessee. Bryant notes that the money found in his jacket contained no dye from an exploding device placed with the money. No money was found on his 50 acre property, and no dye stained materials were found in his truck. Bryant alleges that Sherlene Conyers was seriously addicted to Oxycodone when she testified against him. Finally, his stepfather said he was unsure whether the gun used in the robbery was the same one he had loaned Bryant.

These alleged deficiencies do not demonstrate a lack of proof as to each element of the charged offenses. It is not for this court to "reweigh the evidence, reevaluate the credibility of witnesses or substitute [its] judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005), *citing United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).

The Government presented a plethora of evidence from which a jury could find the appellant guilty of each and every element of the charged offenses. Five witnesses described the robber, the gun and the threats. The appellant's DNA was found on the green towel dropped by the robber during the incident. Sherlene Conyers testified that Bryant paid her to case the bank prior to the robbery. The vehicle found on Bryant's property matched the description of the vehicle used by the

robber following the bank robbery. The rifle used in the robbery was similar to the one loaned to Bryant by his stepfather.

We conclude that the evidence presented was of such character that a reasonable jury could have found the appellant guilty beyond a reasonable doubt.

**IV.**

Bryant contends that the district court relied upon matters adequately taken into account by the sentencing guidelines to justify an improper upward variance. Specifically, he contends that (1) the sentencing guidelines already assumed a potential for harm to victims; (2) the alleged psychological injuries to the bank employees and customer were incorporated into the Sentencing Guidelines and any further consideration should have required medical proof, which was lacking; and (3) 18 U.S.C. § 924(c) contained an enhanced mandatory sentence for brandishing a firearm, which should not have been further enhanced without a discharge of the gun.

The district court did an exemplary job of explaining its reasons for imposing an above guideline sentence. As to the potential for harm, the district court explained:

> Mr. Bryant, I have been on this bench going on 9 years now. I practiced law for 23 years before that. Over the course of those years, I have either handled as a lawyer or presided over as a judge many bank robbery cases. I've got to tell you that the circumstances of this case lead me to conclude that this particular bank robbery carried out in the community where it was carried out, carried out in the close confines where it was carried out, and carried out in the manner in which it was accomplished poses in my view the greatest potential for injury or death of any bank robbery case I've ever seen.

> Frankly, I am amazed that somebody was not seriously injured or killed on the day of this robbery. You entered the National Bank of Tennessee in Cosby with a rifle, threatened to kill people with the means to kill them if they didn't do what you told

them to do. You did it in a very aggressive and threatening manner. You actually committed a physical assault while in the bank itself.

(Dist. Ct. Sentencing Tr. at 24, Dist. Ct. Docket No. 90.)

The district court also considered the significant psychological harm caused by the appellant. The district court noted:

> You went into that bank at a time when there were three bank employees present in the bank. Mr. Reeves has recited the testimony of some of those, and I've heard the allocution of Ms. Mathis here this morning. Ms. Mathis understates, frankly, the impact that an event such as this has on a bank teller in those circumstances. There is no doubt that she is correct that this incident has impacted the lives of every one of them, as well as the customer who was in that bank that day, and I would dare say others in the community as well.
>
> I vividly remember the testimony of Ms. Seay that all that she could think about while this robbery was occurring was, what's going to happen to my children. I'm about to be killed, who is going to take care of my children.
>
> I dare say that neither Ms. Mathis, Ms. Seay nor Ms. Webb will ever forget the events of September 27; and while none of them were shot or seriously injured physically, they will nevertheless suffer the results of their emotional injuries in all likelihood for the rest of their life, Mr. Bryant.
>
> I am very well aware, without Mr. Reeves even reciting today, what bank tellers typically say about the impact of these robberies, even robberies where a gun is not displayed or brandished, on their emotional health. It's not at all unusual for a bank teller under these circumstances to have to seek professional help. It's not at all unusual for these kinds of events because of the emotional trauma that's suffered for a bank teller to have difficulty with other relationships, family or work relationships. It's not at all unusual for bank tellers not to return to that kind of employment because they find out they simply cannot stand the stress, and they wonder every time the door opens whether there's another robber coming through the door.
>
> I very well remember what happened to Ms. Whitten on the day of that robbery where she managed to maintain herself on her feet until you left that bank and then she collapsed. I don't doubt that she had bad dreams. I don't doubt that she feels anxiety when somebody comes up behind her. I don't doubt that she feels anxiety when she is standing in a line and somebody comes in the door behind her or gets in

the line behind her, and I don't doubt that she'll have those kinds of injuries for the rest of her life.

*Id.* at 25–26.

Finally, the district court addressed the method in which Bryant used the gun:

You know, whether you put a gun in the face of somebody that day or not is irrelevant.  You were within a few feet of all of these ladies who were in that bank that day, brandishing a large firearm, threatening to kill them.  Whether it was literally in their face or not, I have no doubt that it felt like that firearm was right in their face, and I have no doubt that they had no doubt of your willingness to use that firearm.

*Id.* at 27.

The district court then explained its conclusion:

Now, what I have to do with all those factors, Mr. Bryant, is to weigh them and balance them and come to a conclusion about what sentence is sufficient but not greater than necessary in this case.  And Congress meant what it said, the mandate is to impose a sentence sufficient but not one day greater than necessary to comply with the purposes of sentencing established by the Congress.

This is, as I've said to you, one of those rare cases where I have come to the conclusion that the guideline range does not adequately take into account all of the 3553(a) factors.  It is one of those rare cases where I have some policy disagreement with the guideline, primarily because it does not reflect truly the seriousness of the offense.  It does not in this particular case fully reflect the nature and circumstances of the crime that was committed.  It does not fully take into account the degree of harm suffered by others.  It does not fully take into account, in my view, the need to deter this kind of activity, and it does not adequately protect the public.

So I find based on my balancing of all those factors that the Government's argument here for an above guideline sentence is well taken; and as I said earlier, the Government suggests basically a doubling of the guideline range, from a top of the range sentence of 63 months on the bank robbery to a sentence of 120 months.

It's hard, Mr. Bryant, to come to a precise conclusion about what sentence is sufficient but not greater than necessary.  I wish it were as simple as the statute somewhat makes it appear; and that is that you simply go down this list of factors,

you assign a weight to them, you add up the total and that gives you an answer. And to some extent that's the way it used to be when the guidelines were mandatory, just add up certain numbers and you get an answer; but it's not that simple.

While I think some variance from the guideline range upward is appropriate here based on the factors I have identified, I also find that the significant upward variance suggested by the Government, that is basically a 100 percent upward variance, is not justified under the facts and circumstances of the case. What I am going to do, however, Mr. Bryant, is impose a sentence on this bank robbery count which is significantly above the guideline range.

*Id.* at 38–40.

The sentence imposed was not substantively unreasonable. The district court properly computed the sentencing guidelines, considered all the § 3553(a) factors, and did not rely on impermissible sentencing factors. The district judge cogently and thoroughly explained his reasoning in concluding that the sentencing guidelines did not adequately capture the gravity of the offenses committed by the appellant.

**V.**

Based upon the foregoing, the judgment of conviction and the sentence imposed are affirmed.