RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

v.

TREVON MARQUISE GATES (20-2092); DEONTE
COURTEZ GATES (20-2221),

        *Defendants-Appellants*.

Nos. 20-2092/2221

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00157—Paul Lewis Maloney, District Judge.

Argued: December 7, 2021

Decided and Filed: September 6, 2022

Before: CLAY, DONALD, and NALBANDIAN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Joshua A. Blanchard, BLANCHARD LAW, Greenville, Michigan, for Appellant in 20-2092. Laura J. Helderop, SPRINGSTEAD BARTISH BORGULA & LYNCH, PLLC, Grand Rapids, Michigan, for Appellant in 20-2221. Joel S. Fauson, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Joshua A. Blanchard, BLANCHARD LAW, Greenville, Michigan, for Appellant in 20-2092. Laura J. Helderop, Matthew G. Borgula, SPRINGSTEAD BARTISH BORGULA & LYNCH, PLLC, Grand Rapids, Michigan, for Appellant in 20-2221. Austin J. Hakes, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

      CLAY, J., delivered the opinion of the court in which DONALD, J., joined. NALBANDIAN, J. (pp. 20–23), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.   Brothers Trevon and Deonte Gates appeal their sentences stemming from their involvement in a methamphetamine distribution network.   On appeal, Trevon challenges the 72-month sentence he received for pleading guilty to one count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i). He claims the district court's failure to calculate his Sentencing Guidelines was procedural error. Likewise, Deonte challenges the 110-month sentence he received for pleading guilty to one count of possession with intent to distribute methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii).   Deonte claims the district court improperly considered juvenile conduct when calculating his Sentencing Guidelines range.   For the reasons set forth below, we **VACATE** Trevon's sentence and **REMAND** for resentencing, and **AFFIRM** Deonte's sentence.

## I. BACKGROUND

### A.  Factual Background

In January 2019, when brothers Trevon and Deonte Gates were 19-years-old and 17-years-old, respectively, a confidential informant notified the Kalamazoo, Michigan, Department of Public Safety ("KDPS") that methamphetamine was being sold from 913 Cooper Avenue and that two firearms were in the home.  KDPS conducted a preliminary investigation and linked the Gates brothers to the residence.  On January 8, 2019, KDPS searched the trash set out at 913 Cooper Avenue and uncovered a counterfeit $100 bill, ammunition casings, bullets, several baggies, two of which tested positive for the presence of methamphetamine, and additional evidence linking the Gates brothers to the residence.  The same day, KDPS obtained a search warrant for the residence.  On January 9, 2019, KDPS executed the search warrant.  They found one firearm, dozens of rounds of ammunition and shell casings, three cell phones, three baggies suspected of containing drugs, and a digital scale.  Deonte was arrested on outstanding warrants but not charged for the contraband recovered during the search.

On February 22, 2019, Deonte turned 18-years-old. Approximately two weeks later, on March 8, 2019, KDPS made contact with Deonte in a motel parking lot. Deonte consented to a search of his vehicle and officers uncovered a digital scale containing methamphetamine residue.

On March 25, 2019, KDPS was surveilling Matthew Boeve, a known drug dealer in the area. KDPS followed Boeve to the 913 Cooper Avenue residence, watched him enter the home, and then return to his vehicle. KDPS stopped Boeve's vehicle later that evening and found 68.19 grams of methamphetamine. Boeve told KDPS he had purchased the quantity from the Gates brothers, and that this was at least his sixth purchase of methamphetamine from them.

The following day, KDPS obtained a second search warrant for the 913 Cooper Avenue residence. This second search uncovered over 60 grams of methamphetamine, a shotgun, ammunition, firearm magazines, and drug paraphernalia. On April 17, 2019, Boeve told federal prosecutors he made three purchases of methamphetamine from the Gates brothers totaling eight ounces.

Besides Boeve, KDPS interviewed local drug trafficker, Phillip Bell. The record is inconsistent regarding how frequently and in what quantities Bell purchased methamphetamine from the Gates brothers. Bell told prosecutors that at one point, he purchased one to two ounces of methamphetamine from the Gates brother every two to three days for five weeks. However, Bell also stated that over the course of his drug dealing with the Gates brothers he made ten purchases of methamphetamine from the Gates brothers in quantities up to seven ounces. In one transaction, Bell claims to have purchased one-quarter pound of methamphetamine for $1,100. Two days after the quarter-pound purchase, Bell allegedly purchased two to three additional ounces of methamphetamine for $300. On or around March 10, 2019, Bell reportedly purchased seven additional ounces of methamphetamine for $1,600.

In total, between the quantities KDPS recovered from the execution of both search warrants and their transactions with Boeve, Bell, and others, a conservative estimate by U.S. Probation and Pretrial Services concluded that Trevon and Deonte were accountable for distributing 1.41 kilograms of methamphetamine during the relevant time.

A grand jury charged the Gates brothers in a six-count indictment on June 26, 2019. Both brothers were charged with conspiracy to distribute and possess with intent to distribute methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii) ("Count One"), possession with intent to distribute methamphetamine, 21 U.S.C. § § 841(a)(1), 841(b)(1)(B)(viii) ("Count Two"), and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i) ("Count Three"). Additionally, Trevon was charged with a second count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i) ("Count Four"), being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2) ("Count Five"), and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(d) ("Count Six").

On July 14, 2020, the day the Gates brothers were set to begin their joint trial, they both entered into plea agreements. Trevon pleaded guilty to Counts One and Four. Deonte pleaded guilty to Counts Two and Three. All other charges were dismissed.

## B. Trevon's Sentencing

Trevon was sentenced on October 30, 2020. For a § 841(a)(1) conviction, the offense level varies based on the quantity of methamphetamine distributed. *See* U.S.S.G. §2D1.1. Because Trevon was accountable for 1.41 kilograms of methamphetamine, probation recommended an offense level of 30 and a two-level reduction for accepting responsibility. Probation also determined Trevon had a criminal history category of IV. With an offense level of 28 and criminal history category of IV, the Sentencing Guidelines Table recommended a sentencing range of 110 to 137 months. However, because § 841(b)(1)(A)(viii) carries a mandatory minimum sentence of 120 months, Trevon's advisory range was adjusted to 120 to 137 months**.** For Trevon's § 924(c) conviction, probation calculated his Guideline as the mandatory minimum sentence of 60 months imprisonment to be served consecutively. *See* U.S.S.G. § 2k2.4.

At sentencing, the district court independently calculated Trevon's Sentencing Guidelines range for his § 841(b)(1)(A)(viii) conviction and agreed with probation's calculation of 120 to 137 months. The district court concluded a within-Guidelines sentence was appropriate and

sentenced Trevon to the mandatory minimum sentence of 120 months. Regarding Trevon's § 924(c) conviction, however, the district only mentioned the mandatory minimum sentence of 60 months. The district court concluded that because Trevon had recently been convicted of a similar firearms offense in Michigan state court, the mandatory minimum sentence of 60 months was inadequate. In explaining the rationale for its sentence, the district court stated:

> For purposes of the sentence on Count Four, the Court consulted the guidelines. Mr. Gates has a Criminal History Category of IV. The Court went down the chart to a guideline range for Criminal History Category IV, which includes 60 months and went up two levels for the reasons that I've already stated, to decide on the sentence of 72 months.

(Trevon's Sent'g Tr., R. 167, PageID #915.) In total, Trevon was sentenced to 192 months. Trevon objected to his above-Guidelines sentence. The district court responded, "Well, I didn't – I'm not sure that's a departure or a variance. I didn't impose – I didn't impose the mandatory minimum for the reasons that I stated. The crime itself is without a guideline, correct?" (*Id.*, PageID #918.) Trevon's counsel informed the district court the Sentencing Guidelines did, in fact, recommend a sentence of 60-months imprisonment—the same as the mandatory minimum. The court responded, "Well, all right. If that's correct, then I have varied upward for the reasons that I stated." (*Id.*, PageID ##918–19.) Trevon timely appealed his sentence.

### C. Deonte's Sentencing

Like Trevon, because Deonte was held accountable for 1.41 kilograms of methamphetamine, his offense level was calculated to be 30. Deonte also received a two-level reduction for accepting responsibility, making his total offense level 28. Additionally, probation determined Deonte had a criminal history category of IV. With an offense level of 28 and a criminal history category of IV, the Sentencing Guidelines recommend a sentence of 110 to 137 months imprisonment. Because Deonte pleaded guilty under § 841(b)(1)(B)(viii), unlike Trevon who pleaded guilty under § 841(b)(1)(A)(viii), Deonte's sentence did not need to be adjusted to comply with a mandatory minimum.

On December 9, 2020, the district court sentenced Deonte. The district court agreed with the PSI and considered all 1.41 kilograms of methamphetamine when calculating Deonte's offense level. With a Guideline range of 110 to 137 months imprisonment for his § 841(a)(1)

charge, the district court sentenced Deonte to 110 months. For his § 924(c) charge, the district court sentenced Deonte to the mandatory minimum sentence of 60 months imprisonment. Deonte timely appealed his sentence.

## II. ANALYSIS

### A. Trevon's Sentence

#### i. Procedural Reasonableness

On appeal, district court sentencing determinations are reviewed for reasonableness. *United States v. Nichols*, 897 F.3d 729, 736 (6th Cir. 2018). The reasonableness inquiry has two components: procedural and substantive. *Gall v. United States*, 552 U.S. 38, 51 (2007). Because Trevon objected to his sentence, this Court reviews the procedural reasonableness of his sentence under an abuse-of-discretion standard. *United States v. Cruz*, 976 F.3d 656, 661 (6th Cir. 2020).

Procedural error occurs when the district court "*fail[s] to calculate* (or improperly calculat[es]) *the Guidelines range,* treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016) (emphasis in original). "[D]istrict courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)) (emphasis in original); *United States v. Peebles*, 624 F.3d 344, 347 (6th Cir. 2010). The "failure to calculate the Guidelines range renders a sentence procedurally unreasonable." *Fowler*, 819 F.3d at 305.

The sentencing transcript overwhelmingly supports the conclusion that the district court did not openly address the Sentencing Guidelines as they related to Trevon's § 924(c) conviction. Throughout his sentencing hearing, the district court never acknowledged that the Sentencing Guidelines recommended a 60-month sentence for Trevon's § 924(c) conviction. The court only mentioned the statutory mandatory minimum. After the district court imposed a 12-month above-Guideline sentence, Trevon objected. The district court responded, "Well,

I didn't – I'm not sure that's a departure or a variance.  I didn't impose – I didn't impose the mandatory minimum for the reasons that I stated.  *The crime itself is without a guideline, correct?*"  (Trevon's Sent'g Tr., R. 167, PageID ##918–19 (emphasis added).)  If the district court had, in fact, calculated Trevon's Guidelines range, it surely would have known § 924(c) is not "without a guideline."  (*Id*.)

The district court's failure to calculate Trevon's Sentencing Guidelines is made worse by the fact that Trevon brought the error to the court's attention.  Instead of reviewing the Guidelines and correcting the error, the district court simply said, "Well, all right.  If that's correct, then I have varied upward for the reasons that I stated."  (*Id*., PageID ##918–19.)

Despite the strong evidence that the district court entirely failed to calculate Trevon's § 924(c) Sentencing Guideline, the government argues that the Statement of Reasons filed after the district court had imposed Trevon's sentence demonstrates that it satisfied its procedural duty.  Additionally, the government argues that the Sentencing Guidelines were the same as the mandatory minimum, and by discussing the mandatory minimum, the district court sufficiently addressed the Sentencing Guidelines.  Neither of these arguments is convincing.

As a threshold matter, statements of reasons filed after sentences are imposed "must be viewed with some caution."  *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011).  The statement of reasons serves a record-keeping function for the U.S. Sentencing Commission and "was not intended as a procedural safeguard for any particular defendant."  *Id*. at 422.  This Court disfavors allowing statements of reasons to "obfuscate unambiguous reasoning given by a district court at the oral hearing . . . ."  *Id*.

The district court noted in Trevon's Statement of Reasons that the Guidelines range for all Trevon's convictions totaled 180 to 197 months.  Because the sentencing guideline for his § 841(a)(1) conviction was 120 to 137 months, the government argues this demonstrates the district court properly added the 60-month Sentencing Guideline for Trevon's § 924(c) conviction.  This argument is unpersuasive.  First, district courts prepare statements of reasons *after* the sentence is imposed.  *See* 28 U.S.C. § 994(w)(1)(B).  However, our case law makes abundantly clear that the Sentencing Guidelines must be "the starting point" of the sentencing

decision.  *Peebles*, 624 F.3d at 347; *Gall,* 552 U.S. at 49.  A post-sentencing acknowledgment in the statement of reasons does not satisfy this duty.

Notwithstanding the timing issue, Trevon's Statement of Reasons provides no clarification as to whether the district court actually calculated Trevon's Guideline or continued to use the mandatory minimum.  The record contains no evidence the district court reached the "180 to 197 months" determination through use of the Sentencing Guidelines.  In fact, the Statement of Reasons, itself, suggests the district court did not rely on the Sentencing Guidelines.  In justifying the above-Guidelines sentence, the Statement of Reasons treats the 12-month increase as a variance.  In a comment to U.S.S.G. § 2K2.k, the section relevant to § 924(c), the Sentencing Guidelines state, "a sentence above the minimum term required by 18 U.S.C. § 924(c). . . is an upward *departure* from the guideline sentence."  U.S.S.G. § 2K2.k cmt. B (emphasis added).  Surely, if the district court had calculated the Guideline recommendation for Trevon's § 924(c) conviction, it would have known to treat the 12-month increase as a departure.

The government's second argument—that mentioning the mandatory minimum sentence was sufficient to constitute addressing the Sentencing Guidelines because they were both 60 months—also fails.  The government is correct in pointing out that throughout the sentencing hearing, the district court repeatedly mentioned the mandatory minimum sentence.  But the government fails to direct the Court to any authority holding the Sentencing Guidelines and mandatory minimums are interchangeable.

At sentencing the district court has an affirmative obligation to calculate the Sentencing Guidelines.  *Rosales-Mireles*, 138 S. Ct. at 1904.  Reference to the mandatory minimum is no substitute for the explicit requirement to calculate Trevon's Guideline.  The district court's reference to the mandatory minimum sentence is not sufficient to constitute calculating Trevon's Guidelines range.  Consequently, we find that the district court's failure to calculate Trevon's Sentencing Guidelines range resulted in procedural unreasonableness.

### ii. Harmless Error

Anticipating that we might find the district court's handling of Trevon's sentencing procedurally unreasonable, the government goes on to argue that any error caused by the district

court's failure to calculate Trevon's Sentencing Guidelines was harmless because the district court would have imposed the same sentence under the Guidelines.

We have held that even if a district court commits procedural error, the sentence will not be vacated if the error was harmless. *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019). A sentencing error is harmless when the district court indicates it would have imposed the same sentence regardless of the procedural error. *United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017). The burden is on the government to prove "with certainty" that the district court would have imposed the same sentence had the Guidelines had been properly calculated. *United States v. Rosales*, 990 F.3d 989, 1000 (6th Cir. 2021); *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009).

All the cases on which the government relies are cases in which the district court incorrectly calculated the respective defendants' Sentencing Guidelines ranges. *Molina-Martinez*, 578 U.S. at 189; *United States v. Buchanan*, 933 F.3d 501 (6th Cir. 2019); *Faulkner*, 926 F.3d at 266; *Morrison*, 852 F.3d at 488; *Gillis*, 592 F.3d at 696; *United States v. Obi*, 542 F.3d 148 (6th Cir. 2008); *United States v. Butler*, 812 F. App'x 311 (6th Cir. 2020). None of these cases deals with a situation in which the district court completely failed to calculate the defendants' Sentencing Guidelines ranges. Whether a sentence may be affirmed when the district court fails to calculate the Sentencing Guidelines seems to be an issue of first impression in this Circuit. The Court need not answer this question, however, because even assuming the harmless error test applies when the district court fails to calculate the Sentencing Guidelines, the government has failed to meet its burden of proving "with certainty" that the district court would impose the same sentence notwithstanding the procedural error. *Rosales*, 990 F.3d at 1000.

The "certainty" at the foundation of the government's argument stems from the district court's finding "that the mandatory minimum is inadequate and [it] intend[s] to give [Trevon] a sentence above the mandatory minimum for his firearms offense." (Trevon's Sent'g Tr., R. 167, PageID #915.) Additionally, the government points to the district court's statement after Trevon objected to his sentence and notified the court that the Sentencing Guidelines should have been considered. The court stated, "If that's correct, then I have varied upward for the reasons that I stated." (Trevon's Sent'g Tr., R. 167, PageID ##918–19.)

There are two problems that undermine the certainty of the district court's sentence. First, a sentence above the mandatory minimum and a sentence above the Guidelines are different. Had the district court known that the U.S. Sentencing Commission recommended Trevon be sentenced to 60 months imprisonment, it may have imposed a 60-month sentence or departed to a lesser degree. "Courts are not bound by the Guidelines, but even in an advisory capacity the Guidelines serve as 'a meaningful benchmark.'" *Rosales-Mireles*, 138 S. Ct. at 1904 (quoting *Peugh*, 569 U.S. at 541). Additionally, a within-Guidelines sentence is presumptively reasonable, *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc), but a sentence of the mandatory minimum is not necessarily entitled to the same presumption. It is certainly plausible that the district court would have imposed a lower sentence if it had properly considered Trevon's Guidelines.

Second, the district court's comment that it "varied" upward from the mandatory minimum further undermines any "certainty" that it would have imposed the same sentence had it considered the Sentencing Guidelines. As mentioned above, an above-Guideline sentence for a § 924(c) conviction is a departure, not a variance. U.S.S.G. § 2K2.k cmt. B. The difference between a departure and a variance is subtle but important. In *Denny*, this Court explained the difference:

> A Guidelines "departure" refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. A "variance" refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct.

*Denny*, 653 F.3d at 419 (quoting *United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009) (per curiam)). The main justification for Trevon's above-Guideline sentence was that he had recently been convicted in Michigan state court for similar conduct. While this is an appropriate justification under the § 3553(a) factors, the record does not indicate any specific Guidelines provision that would justify an upward departure. In other words, the justification the district court provided for its upward "variance" does not necessarily justify an upward departure.

Because departures require different findings than variances, on remand, the district court may find an upward departure is not warranted in this case even if an upward variance is.

The dissent argues that drawing a distinction between departures and variances "is wrong as a matter of law" in a post-*United States v. Booker*, 543 U.S. 220 (2005), world. Dissent at 2–3. To be clear, we are not holding that a sentence must be vacated as procedurally unreasonable every time a district court says it is "varying" from a Guideline when the Guidelines instead instruct the court to "depart." As the dissent correctly points out, we often affirm sentences even when the district court uses an imprecise term of art. *See United States v. Stewart*, 628 F.3d 246 (6th Cir. 2010); *United States v. Perdue*, 818 F. App'x 419, 423 (6th Cir. 2020); *United States v. Morgan*, 572 F. App'x 292, 294 (6th Cir. 2014); *United States v. Bryant*, 529 F. App'x 673, 675 (6th Cir. 2013). But in each of the cases upon which the dissent relies, the district courts unquestionably calculated the defendants' Guidelines ranges. Thus, the use of "depart" when the court should have said "vary," and *vice versa*, is less consequential to the procedural reasonableness of the defendants' sentences than in situations like the present appeal where we are trying to determine if the court did, in fact, calculate the defendant's Guidelines.

In this case, we have no indication the district court ever consulted the Sentencing Guidelines before imposing Trevon's sentence. The fact that the district court used a term of art (i.e., vary) contrary to the term of art used by the Guidelines (i.e., depart) is simply additional evidence that the court never calculated Trevon's Guidelines. In conclusion, we find that the record does not demonstrate "with certainty" that the district court would impose the same sentence notwithstanding the procedural error; therefore, the district court committed a non-harmless error. For these reasons, we vacate Trevon's § 924(c) sentence and remand for resentencing. Because we find the sentence procedurally unreasonable, we need not address the substantive reasonableness of Trevon's sentence. *See, e.g., United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009).

**B.  Deonte's Sentence**

Deonte challenges the procedural and substantive reasonableness of his 110-month sentence for possession with intent to distribute methamphetamine. Specifically, he alleges that

the district court improperly calculated his Sentencing Guidelines and that the district court placed too much emphasis on some § 3553(a) factors.

### i. Procedural Reasonableness

As mentioned above, this Court will find a sentence procedurally unreasonable "if the district court 'fail[s] to calculate (or improperly calculate[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018) (quoting *Gall*, 552 U.S. at 51). The Court reviews the procedural reasonableness of Deonte's sentence for abuse of discretion. *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013). The application of the Sentencing Guidelines, however, is reviewed *de novo*. *United States v. Benton*, 957 F.3d 696, 700 (6th Cir. 2020).

Unlike Trevon, who argued the district court failed to calculate his Sentencing Guidelines range, Deonte argues the district court improperly calculated his offense level by including the quantity of methamphetamine he sold before reaching eighteen-years-old. He argues that the district court should have only considered the quantity of drugs sold after his eighteenth birthday, which would have resulted in a substantially lower Guidelines range.

This Court rejected Deonte's argument in the related cases of *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999), and *United States v. Hough*, 276 F.3d 884 (6th Cir. 2002). In *Gibbs*, Anthony and Chad Gibbs were convicted as part of a take-down targeting drug crimes in Columbus, Ohio. *Gibbs*, 182 F.3d at 418. Anthony was convicted of possession with intent to distribute crack, using or carrying a firearm during and in relation to a drug trafficking crime, and distributing crack. *Id*. at 419. Chad was convicted of possession with intent to distribute crack and of distributing crack. *Id*. Both Anthony and Chad joined the drug operation before their eighteenth birthdays but were not charged until after they reached the age of majority. *Id*. at 442–43. At both of their sentencing hearings, the district court considered the quantity of drugs they distributed before and after they turned eighteen-years-old. *Id*. They both challenged the district court's inclusion of their pre-eighteen drug distributions on appeal. *Id*.

Addressing Anthony first, the Court vacated his sentence for other reasons but explicitly "h[e]ld that the district court on remand may take into account quantities of crack cocaine [Anthony] sold before he reached age eighteen as relevant conduct to Gibbs's independent drug trafficking convictions." *Id*. at 442.  The Court reached the same conclusion for Chad.  *Id*. at 443.  In reaching this conclusion, the Court predominantly relied on U.S.S.G. § 1B1.3(a)(2).  Section 1B1.3(a)(2) permits sentencing courts to consider acts "that were part of the same course of conduct or common scheme of plan as the offense of conviction." *Id*.  Because the Gibbs brothers were convicted for a crime that occurred after they reached the age of majority, the Court held "the district court may consider relevant conduct that occurred before the defendant[s] reached the requisite age as long as such conduct falls within the limitations set forth in § 1B1.3(a)(2)." *Gibbs*, 182 F.3d at 442.

On remand, the district court followed the holding in *Gibbs* and included Anthony's pre-eighteen drug quantities when calculating his Guidelines range.  *Hough*, 276 F.3d at 897.  Anthony appealed his sentence again.  This time, Anthony argued the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 5031 *et seq*., prevented the district court from considering his pre-eighteen drug quantities.  *Id*. at 897–98.  In brief, his argument was that because the FJDA prevented federal prosecutors from *convicting* Anthony based on the pre-eighteen drug quantities, the FJDA should be interpreted to exclude such quantities at sentencing.  *Id*.

The *Hough* court disagreed and affirmed the holding in *Gibbs. Id*. at 897.  The Court found persuasive a Second Circuit case decided shortly before Anthony's first appeal.  The Second Circuit held that "'a federal district court may consider any relevant conduct when sentencing a defendant, whether or not the conduct is a federal crime.'" *Id*. at 898 (quoting *United States v. Martin*, 157 F.3d 46 (2d Cir. 1998)); *accord United States v. Dickler,* 64 F.3d 818, 831 (3rd Cir. 1995).  Thus, although, the FJDA prohibited the government from charging Anthony for the pre-eighteen drug quantities, such quantities could be considered in his sentencing.  Ultimately, the Court affirmed Anthony's sentence. *Hough*, 276 F.3d at 899.

Both *Gibbs* and *Hough* are directly on point.  Nevertheless, Deonte argues this Court's unpublished decision in *United States v. Machen*, 576 F. App'x 561 (6th Cir. 2014), limits their

scope. Essentially, Deonte argues the government had to prove he "ratified" his pre-eighteen conduct in order for the district court to properly consider his pre-eighteen drug quantities. Even if *Machen* were precedential, it does not change the outcome in Deonte's favor. In *Machen*, the Court held that to be guilty of an age-of-majority-spanning conspiracy, a defendant must ratify his involvement in the conspiracy after turning eighteen-years-old. *Machen*, 576 F. App'x at 566. Machen's conviction was reversed because the district court did not instruct the jury it had to find he ratified his pre-eighteen involvement in the conspiracy. No sentencing issues were presented in *Machen*. In *Gibbs* and *Hough*, like in Deonte's case, the Gibbs brothers were not convicted of being part of a conspiracy; and therefore, there was no question of whether they were required to ratify their conduct after turning eighteen. *Gibbs*, 182 F.3d at 442. Deonte's case is significantly more analogous to, and controlled by, *Gibbs* and *Hough*.

Deonte goes on to argues that *Gibbs* and *Hough* need not be overruled for this Court to rule in his favor. Instead, he argues that the district court misinterpreted the cases, and it should have made independent factual findings as to how much methamphetamine was attributable to Deonte's pre-eighteen conduct, and what quantity was attributable to his post-eighteen conduct. In separating the quantities, Deonte would have the sentencing court place less emphasis on the pre-eighteen drug quantities.

This interpretation of *Gibbs* and *Hough* is a stretch, to say the least. First, nothing in the cases suggests the district court is required to distinguish between pre-eighteen and post-eighteen drug quantities. The only findings the district court must make regarding the drug quantities are that they are part of the same course of conduct as required under § 1B1.1 of the Sentencing Guidelines. Additionally, to require the district court to make factual findings as to the pre- and post-eighteen drug quantities would be to be create a distinction without a difference. Counsel for Deonte concedes that even after making separate factual findings, the district court could still consider the pre-eighteen drug quantities as relevant conduct when calculating a defendant's Sentencing Guidelines range. Thus, Deonte's suggested interpretation of *Gibbs* and *Hough* would add an additional step in the sentencing process but ultimately would not change how the Sentencing Guidelines are calculated for age-of-majority spanning drug offenses.

Deonte next argues that the Supreme Court's holdings in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), require this Court to re-examine its holdings in *Gibbs* and *Hough*. In *Blakely*, the Supreme Court held that any facts used to increase the statutory maximum sentence must be submitted to a jury. *Blakely*, 542 U.S. at 301. The "'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303–04 (emphasis in original). Deonte's conviction under 21 U.S.C. § 841(b)(1)(B)(viii) carried a statutory maximum sentence of forty years imprisonment. 21 U.S.C. § 841(b)(1)(B)(viii). Without making any additional factual findings, the district court could have imposed a sentence of forty years imprisonment. Even assuming the inclusion of the full 1.41 kilograms of methamphetamine was proper, the statutory maximum sentence under § 841(b)(1)(B)(viii) is not increased. Section 841(b) explicitly lists the factual findings that allow a sentencing court to increase the statutory maximum sentence. *See* 21 U.S.C. §§ 849, 859, 860, 861. For example, if a defendant is found to have distributed drugs to someone under the age of 21, the maximum sentence is doubled. § 859(a). The district court did not make any factual findings that would increase Deonte's maximum sentence. Simply put, *Blakely* is not applicable here.

Additionally, Deonte relies on the Supreme Court's holding in *Booker*. In that case, a jury found Booker guilty of possessing 92.5 grams of crack, which would have authorized a sentence of 210 to 262 months. *Booker*, 543 U.S. at 235. At sentencing, the district court independently found that Booker possessed an additional 566 grams of crack, which substantially increased his sentencing range. *Id.* At the time, the Sentencing Guidelines were considered mandatory; therefore, judicial fact-finding that increased a defendant's sentencing range was similar to increasing the statutory maximum. On appeal, the Supreme Court found "[t]here [was] no relevant distinction between the sentence imposed . . . in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines in [this case]." *Id.* Ultimately, the Supreme Court held that the Sentencing Guidelines were advisory. *Booker*, 543 U.S. at 220. Like *Blakely*, nothing in *Booker* suggests district courts cannot consider pre-eighteen conduct related to a post-eighteen conviction.

Deonte's final argument is that public policy has changed so significantly since *Gibbs* and *Hough* were decided that their holdings should be revisited. Deonte relies on an arsenal of evidence to prove shifting public policy attitudes, including Supreme Court cases, federal and state statutes, and scientific studies. Specifically, Deonte notes that since *Gibbs* and *Hough*, the Supreme Court has expanded sentencing protections for juveniles. *See Roper v. Simmons*, 543 U.S. 551 (2005) (holding juveniles cannot be sentenced to death); *Graham v. Fla.*, 560 U.S. 48 (2010) (holding juveniles cannot be sentenced to life without parole except in homicide cases); *Miller v. Alabama*, 567 U.S. 460 (2012) (holding juveniles are not subject to mandatory life without parole statutes even for homicide); *but see Jones v. Mississippi*, 141 S. Ct. 1307 (2021) (holding sentencing court need not make finding of "permanent incorrigibility" before sentencing juvenile to life without parole for homicide). Additionally of note, Deonte argues that the FJDA demonstrates a shift in public policy because Congress enacted the FJDA to provide juveniles additional protections before being prosecuted in federal court.

Considering all Deonte's policy arguments together, there is a trend toward expanding sentencing protections for juveniles. *See* Francis X. Shen et al., *Justice for Emerging Adults After* Jones*: The Rapidly Developing Use of Neuroscience to Extend Eighth Amendment* Miller *Protections to Defendants Ages 18 and Older*, 97 N.Y.U. L. Rev. (Online Feature) 101 (2022). However, this trend has not materialized to such a degree that this panel can overrule *Gibbs* and *Hough*. First, all the cases on which Deonte relies are cases in which the defendant was charged as a juvenile. These cases make clear that a critical factor is the age of the defendant at the time he is charged. Deonte was indicted as an adult, not as a juvenile. *See United States v. Edwards*, 734 F.3d 850, 853 (9th Cir. 2013) ("*Roper* and *Graham* established constitutional limits on certain sentences for offenses committed by juveniles—not for offenses committed as an adult."). The Supreme Court has not yet weighed in on whether young adults are entitled to special sentencing protections for juvenile conduct.

Furthermore, the FJDA does not get Deonte's public policy argument to the finish line. Like the Supreme Court's recent holdings, the focus of the FJDA is juvenile convictions, not adult sentencing. What's more, the FJDA's prohibition against prosecuting juveniles is not nearly as complete as Deonte would have this Court believe. In many instances, federal

prosecutors may charge juveniles so long as they obtain the proper authorization. Another, more glaring problem with Deonte's reliance on the FJDA is that this exact argument was raised in *Hough*. There, the Court called the argument "creative" but rejected it. *Hough*, 276 F.3d at 897. Deonte does not cite any changes to the text or interpretation of the FJDA since *Hough* that would merit overruling *Gibbs* and *Hough*.

In sum, Deonte asks the panel to indirectly overrule *Gibbs* and *Hough*. "A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). While the Supreme Court cases that Deonte references certainly suggest a trend toward expanding protections for juveniles, they do not warrant overruling *Gibbs* and *Hough*. For these reasons, the district court did not err in including Deonte's pre-eighteen drug quantities when calculating his Sentencing Guideline range.

*ii. Substantive Reasonableness*

Because we find the district court's sentencing decision to be procedurally sound, we now "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Bolds*, 511 F.3d at 581 (quoting *Gall*, 552 U.S. at 51).

In reviewing for substantive reasonableness, this Court "take[s] into account the totality of the circumstances." *Id.* (quoting *Gall*, 552 U.S. at 51). "For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). On the other hand, sentences are substantively unreasonable when "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008); *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018). In essence, a "sentence is substantively unreasonable if it is too long." *United States v. Lee*,

974 F.3d 670, 676 (6th Cir. 2020). For sentences within the Guidelines range, the Court may apply a rebuttable presumption of reasonableness, but no presumption may be made for outside-Guidelines sentences. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009).

Deonte challenges the substantive reasonableness of his sentence arguing that by failing to impose a below-Guideline sentence, the district court imposed a sentence that was longer than necessary to achieve the goals of sentencing. Deonte's § 924(c) conviction carried a mandatory minimum sentence of 60 months imprisonment, which was the sentence he received. Because it had no discretion to impose a lower sentence, the district court did not abuse its discretion with respect to Deonte's § 924(c) conviction.

Turning to Deonte's sentence for his § 841(a)(1) conviction, the district court calculated his Guidelines range as 110–137 months imprisonment. The district court opted to impose a sentence of 110-months imprisonment. Because this is a within-Guidelines sentence, we presume the sentence is reasonable. *Herrera-Zuniga*, 571 F.3d at 582.

Deonte argues the district court erred by relying too much on his criminal history and not enough on his age, lack of parental guidance, and drug dependency. Contrary to Deonte's argument, the district court specifically addressed each of these factors. The district court stated:

> The Court recognizes Mr. Gates's age as being a factor for the Court to consider here. But by my count, based on the criminal history outlined in the presentence report, Mr. Gates committed four felonies between January of '19 – or 2019 and the time that he was apprehended on this case, and that doesn't even include this case. . . . The defendant is 19 years of age. He will be 20 in February of next year, and in that short period of time, regretfully Mr. Gates has rolled up a Criminal History Category of IV.
>
> . . .
>
> The influences that Mr. Gates had as a young person were undoubtedly negative, and unfortunately, he didn't resist them. And even when he had the opportunity under court supervision by the state courts to conform his conduct to the requirements of the law, he didn't, and now he faces a very significant sentence here.
>
> . . .
>
> He does need substance abuse treatment and counseling as well. I recommend him for the [Residential Drug Abuse Program], . . . that is the best substance

abuse program within the jurisdiction of the Bureau of Prisons, and Mr. Gates would benefit from participation in the program.

(Deonte's Sent'g Tr., R. 176, PageID ##962–64.) The district court also found especially significant the fact that Deonte had been given an opportunity through Michigan's Holmes Youthful Trainee program, which allows some crimes committed before the age of 24 to be dismissed if the defendant successfully completes the program, but he refused to comply with its terms. Overall, the record demonstrates that the district court placed greater emphasis on Deonte's criminal history and the need to deter future criminal conduct than it did on his age, lack of parental guidance, and drug dependency. However, a sentence is not necessarily substantively unreasonable because a court places greater weight on some factors than others. *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) ("A district court's 'attach[ing] [of] great weight' to a few factors does not constitute reversible error[.]").

Mindful that Deonte's within-Guidelines sentence is entitled to a presumption of reasonableness, we find Deonte's sentence was not substantively unreasonable.

## III. CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court as it relates to Trevon Gates' § 924(c) sentence and **REMAND** for resentencing. Additionally, we **AFFIRM** the judgment of the district court as it relates to Deonte Gates.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

NALBANDIAN, Circuit Judge, concurring in part and dissenting in part. The Gates brothers earned their sentences by trafficking more than a kilogram of meth. Because I believe that we should affirm both Deonte and Trevon's sentences, I dissent in part.

The majority's analysis of Trevon's appeal turns on the procedural reasonableness inquiry. As the majority sees it, Trevon's sentence is procedurally unreasonable because the district court failed to calculate the Guidelines range, opting instead to "only mention[] the statutory mandatory minimum." Maj. Op. at 6.

I see it differently because the Guideline sentence for a § 924(c) conviction *is* the statutory minimum. The Guidelines say precisely that, in fact: "[I]f the defendant . . . was convicted of violating section 924(c) . . . *the guideline sentence is the minimum term of imprisonment required by statute*." U.S.S.G. § 2k2.4(b) (emphasis added); *see also United States v. Gantt*, 679 F.3d 1240, 1243 (10th Cir. 2012) ("For a violation of § 924(c), . . . the Sentencing Guidelines do not provide a guideline sentencing *range* but only a guideline sentence, which is the statutory mandatory minimum."). The majority states that "the government fails to direct the Court to any authority holding the Sentencing Guidelines and mandatory minimums are interchangeable." Maj. Op. at 8. But in doing so, the majority ignores the relevant Guideline itself. All this is to say, the district court "calculated" all there is to calculate.

True, the district court asked Trevon's counsel to confirm whether "[t]he crime is itself without a guideline." (R. 167, Trevon Sentencing Tr., PageID 918.) But it seems clear to me that the court was simply flagging the overlap between the Guidelines and the statute. At the very least, this is the more reasonable interpretation, and one that's consistent with the "highly deferential" review that we owe to the district court. *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005). And indeed, in responding to the district court, Trevon's counsel confirmed that the Guidelines collapse into the statute in this way. (*Id.* at PageID 918 ("I think the guideline

manual says the guideline range for 924(c) is 60 months [the statutory minimum].")) It takes quite the leap to make it from this colloquy to a vacate and remand.

To shore up its conclusion, the majority points to the second application note for U.S.S.G. § 2K2.4(b), which says that "a sentence above the minimum term required by 18 U.S.C. § 924(c) . . . is an upward departure from the guideline sentence." Emphasizing this language, the majority says that "if the district court had calculated the Guideline recommendation for Trevon's § 924(c) conviction, it would have known to treat the 12-month increase as a departure." Maj. Op. at 8.

But this conclusion runs headlong into those cases where we affirmed a district court's upward variance for a § 924 offense. *See, e.g.*, *United States v. Stewart*, 628 F.3d 246, 259–61 (6th Cir. 2010); *United States v. Perdue*, 818 F. App'x 419, 423 (6th Cir. 2020); *United States v. Morgan*, 572 F. App'x 292, 294 (6th Cir. 2014); *United States v. Bryant*, 529 F. App'x 673, 675 (6th Cir. 2013); *see also United States v. Oquendo-Garcia*, 783 F.3d 54, 56–58 (1st Cir. 2015). That is to say, the available precedents confirm that the Guideline for § 924 offenses doesn't confine a district court's upward movements to departures only.

Besides, it's dubious, if not flatly wrong, to suggest that post-*United States v. Booker*, 543 U.S. 220, 254 (2005), a pre-*Booker* Guideline note can override a district court's discretionary authority to vary upward under 18 U.S.C. § 3553(a). Indeed, since *Booker*, our precedent (along with that of every other circuit) has emphasized that a "district court is free to vary from the Guidelines—and can impose a sentence at, below, or above [them]." *Bullard v. United States*, 937 F.3d 654, 659 (6th Cir. 2019); *see also United States v. Buchanan*, 449 F.3d 731, 740 (6th Cir. 2006) ("[T]he guidelines' restrictions on granting departures do not circumscribe a trial court's decision to grant a variance.") So the majority's inference—that is, had the district court calculated an incalculable Guidelines range, it would have known it could only depart, not vary—is wrong as a matter of law and adds little support to its conclusion.

Because the majority resolves its Trevon analysis on procedural reasonableness, it doesn't address the substantive reasonableness inquiry. Be that as it may, Trevon's sentence is substantively reasonable as well. "A claim that a sentence is substantively unreasonable"

reduces to "a claim that a sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). More specifically, "[i]t's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id.* "Needful to say, this is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Id.*

Trevon's § 924(c) sentence was 20 percent higher than the Guideline sentence (i.e., the statutory minimum). The district court spent five pages of the hearing transcript explaining why. It stressed that Trevon, "a very young person at the age of 21[,] ha[d] managed to roll up a Criminal History Category of IV in a very very short period of time." (R. 167, Trevon Sentencing Tr., PageID 913.) More specifically, the court pointed to Trevon's prior conviction for a state firearm felony and another for meth possession. Notably, Trevon committed his most recent round of offenses "a scant five months" after receiving his sentence for his previous meth conviction. (*Id.*) In the court's view, "it[] [was] obvious that Mr. Gates just has not gotten the message that he needs to stay away from drugs and he needs to stay away from firearms." (*Id.*) The district court also considered the "general deterrence of others who might contemplate similar criminal activity." (*Id.* at PageID 914.) And it emphasized that "[t]he mix of drugs and guns is a very serious matter." (*Id.*)

We have routinely upheld similar above-Guidelines sentences for repeat firearm offenders. What's more, these precedents often involve larger upward variances. *See, e.g.*, *United States v. Johnson*, 934 F.3d 498, 499–500 (6th Cir. 2019) (30 percent); *United States v. Cechini*, 834 F. App'x 201, 206–07 (6th Cir. 2020) (40 percent); *United States v. Sims*, 800 F. App'x 383, 387 (6th Cir. 2020) (45 percent). After all, "above-Guidelines sentences for repeat offenses are hardly unusual." *United States v. Evans*, 671 F. App'x 369, 371 (6th Cir. 2016). Juxtaposed against precedents like these, Trevon's 20 percent variance is substantively reasonable. Not least because Trevon's gun-crime track record comes paired with a prior meth conviction. Indeed, the district court's deterrence concerns are well-placed in light of a growing meth scourge that killed 32,856 in our country last year alone. *U.S. Overdose Deaths In 2021 Increased Half as Much as in 2020—But Are Still Up 15%*, National Center for Health Statistics

(May 11, 2022).**¹**  And of course, the considerable deference that governs our review only reconfirms matters. *See United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006) (explaining that "our appellate review . . . looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence.").

Trevon fixates on the fact that his § 924(c) sentence is significantly higher than the 180-day sentence that he received in state court for his earlier firearm felony.  (Trevon Br. at 11–13.)  But this is neither here nor there.  The proper focus of our inquiry is the mileage that separates Trevon's § 924(c) sentence from the Guideline sentence, *not* distinct state court sentences.  *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 51 (2007).  And the district court's extensive explanation of its rationale flatly contradicts Trevon's claim that "there is no explanation of why 72-months would be more appropriate than 60-months [the statutory minimum]."  (Trevon Br. at 12.)  Suffice it to say, "[w]e [should] not second-guess the district court's assessment here." *United States v. Graham*, No. 20-6430, 2021 WL 6071504, at *5 (6th Cir. Dec. 20, 2021).

At bottom, the majority's holding tees up a pointless remand.  It says the district court should do more calculating, but there is nothing left to calculate.  Because I believe Trevon's § 924(c) sentence is procedurally and substantively reasonable, I would affirm in full.

---

**¹**Available at https://www.cdc.gov/nchs/pressroom/nchs_press_releases/2022/202205.htm.